UNITED STATES  DISTRICT COURT

NORTHERN DISTRICT OF NEW YORK
****************************************************
UNITED STATES OF AMERICA,


  vs.                          17-CR-84


 OBINNA OBIOHA,


                         Defendant.
****************************************************

          Transcript of a Plea held on April 17, 2017,

 before the HONORABLE DAVID N. HURD, at the United

 States Federal Courthouse, 10 Broad Street, Utica,

 New York, stenographically recorded by

 Nancy L. Freddoso, Registered Professional Reporter.

                  A P P E A R A N C E S

Government:      UNITED STATES ATTORNEY'S OFFICE
                 445 BROADWAY, ROOM 218
                 ALBANY, NEW YORK  12207
            BY:  WAYNE A. MYERS, AUSA

Defendant:       CORRIGAN MCCOY LAW FIRM
                 ATTORNEYS AT LAW
                 220 COLUMBIA TURNPIKE
                 RENSSALAER, NEW YORK 12144
            BY:  JOSEPH MCCOY, ESQUIRE



                 NANCY L. FREDDOSO, R.P.R.
            Official United States Court Reporter
                 10 Broad Street, Room 316
                   Utica, New York 13501
                      (315) 793-8114

2

Plea Hearing

1            COURT CLERK:  United States of America versus

2     Obinna Obioha, 2017-CR-84.

3            Attorneys, please note their appearance for the

4     record.

5            MR. MYERS:  Good morning, Your Honor.

6     Wayne Meyers on behalf of the United States.

7            THE COURT:  Good morning.

8            MR. MCCOY:  Joseph McCoy, retained attorney for

9     Mr. Obioha.  Good morning, Your Honor.

10           THE COURT:  Good morning.

11           I understand that at this time the defendant is

12    prepared to waive his right to indictment by a Grand Jury

13    and enter a plea of guilty to a two-count Information

14    charging him with wire fraud in violation of 18 U.S.C. 1343.

15           Is that correct, Mr. McCoy?

16           MR. MCCOY:  Yes, Your Honor, that is correct.

17           THE COURT:  Mr. Obioha, stand up.  Have you been

18    shown a copy of the Information?

19           THE DEFENDANT:  Yes, Your Honor.

20           THE COURT:  And have you had an opportunity to

21    review that information with your attorney?

22           THE DEFENDANT:  Yes, Your Honor.

23           THE COURT:  I must now advise you that you have a

24    constitutional right to be charged by an Indictment of a

25    Grand Jury.  But you can waive, or give up, that right and

Plea Hearing

1   consent to being charged by the Information that has been

2   prepared by the U.S. Attorney.  So instead of an Indictment,

3   the felony charges against you will have been brought by the

4   U.S. Attorney filing the Information with the Court.

5           But unless you waive Indictment, you may not be

6   charged with a felony unless a Grand Jury finds by return of

7   an Indictment that there is probable cause to believe that

8   you have committed a crime.  If you don't waive Indictment,

9   the government will undoubtedly present your case to a Grand

10  Jury and ask the Grand Jury to indict you.

11          A Grand Jury is composed of at least sixteen

12  people, and not more than twenty-three, and at least twelve

13  Grand Jurors must believe that there is probable cause to

14  believe you have committed the crimes with which you are

15  charged before you can be indicted.  If the government

16  presents your case to a Grand Jury, it might or might not

17  indict you, but if you waive your right to Indictment by a

18  Grand Jury, your case will proceed against you on the U.S.

19  Attorney's Information just as though you had been indicted.

20          Have you discussed with your attorney about

21  waiving your right to Indictment by a Grand Jury?

22          THE DEFENDANT:  Yes, Your Honor.

23          THE COURT:  Do you understand you have a right to

24  have your case presented to and considered by a Grand Jury?

25          THE DEFENDANT:  Yes, Your Honor.

4

Plea Hearing

1          THE COURT:  Has anyone made any promises or

2    threats to induce you to waive your right to indictment by a

3    Grand Jury.

4          THE DEFENDANT:  No, Your Honor.

5          THE COURT:  Do you wish to waive your right to

6    Indictment by a Grand Jury?

7          THE DEFENDANT:  Yes, Your Honor.

8          THE COURT:  Mr. McCoy, do you know of any reason

9    why your client should not waive his right to indictment by

10   a Grand Jury?

11         MR. MCCOY:  No, Your Honor, I do not.

12         THE COURT:  Has the defendant signed a Waiver of

13   Indictment here in open court?

14         MR. MCCOY:  He did, Your Honor, and I signed it

15   also.

16         COURT CLERK:  A Waiver of Indictment having been

17   signed in open court, this matter is assigned criminal

18   number 17-CR-84.

19         THE COURT:  I make a finding that the waiver was

20   knowingly and voluntarily made, and it is accepted.  Now, I

21   must inform you that you may, of course, enter a plea of not

22   guilty to that Information, and if you did so, you would be

23   entitled to the following rights:  The right to a speedy

24   trial and public trial by an impartial jury of twelve

25   people.

5

Plea Hearing

1          At a trial, you would be presumed innocent under

2    the law, and the burden would be upon the government to

3    establish your guilt beyond a reasonable doubt to the

4    satisfaction of all twelve jurors in order to obtain a

5    conviction.

6          At a trial, you would have the right to the

7    assistance of your attorney, Mr. McCoy, and the right to

8    confront, that is, to see and hear each witness against them

9    and to have him cross-examine them.

10         At a trial, you could either remain silent or

11   testify in your own behalf, but you could never be compelled

12   to testify, and if you did not testify, it could never be

13   held against you in any way.

14         And finally at a trial, you would have the right

15   to call witnesses or exhibits in your defense.  If you pled

16   guilty, of course, you are going to waive and give up all of

17   those rights because there won't be a trial, but I will

18   still have the same power to sentence you as if you had been

19   found guilty after a trial on the two counts in the

20   Information.

21         Is it your desire to waive and give up those

22   rights that I have just explained to you?

23         THE DEFENDANT:  Yes, Your Honor.

24         THE COURT:  Do you understand that if you plead

25   guilty, you will be found guilty without a trial?

6

Plea Hearing

1          THE DEFENDANT:  Yes, Your Honor.

2          THE COURT:  Do you understand that the crimes to

3    which you are proposing to plead guilty are serious crimes,

4    they are federal felonies?

5          THE DEFENDANT:  Yes, Your Honor.

6          THE COURT:  Do you understand that if you plead

7    guilty, you may also be deprived of some valuable Civil

8    Rights such as the right to vote, hold public office, serve

9    on a jury possess any kind of a firearm?

10          THE DEFENDANT:  Yes, Your Honor.

11          THE COURT:  Are you a citizen of the United

12    States?

13          THE DEFENDANT:  No, Your Honor.

14          THE COURT:  What country are you a citizen?

15          THE DEFENDANT:  Nigeria, Your Honor.

16          THE COURT:  Do you understand that if you plead

17    guilty, and I sentence you, that at the end of the sentence

18    you will undoubtedly be deported back to your native

19    country?

20          THE DEFENDANT:  Yes, Your Honor.

21          THE COURT:  Let me now explain the procedure

22    here.  Once you have entered plea of guilty, you will

23    immediately be placed under oath by the Clerk, and I will

24    proceed to ask you a series of questions so that I can be

25    satisfied you are pleading guilty freely and voluntarily.

Plea Hearing

1          I will be asking you about whether any promises

2   of leniency have been made to induce you to plead guilty.  I

3   understand that you have entered into a Plea Agreement with

4   the United States Government, and I will review some of the

5   terms of that agreement.

6          I will be asking you whether any threats or force

7   have been used against you to induce you to plead guilty

8   today.

9          I will also be asking you whether you are

10  presently under the influence of any alcohol, narcotics,

11  drugs, pills, or medicine which would in any way impair your

12  ability to understand the nature of the charges against you

13  and the consequences of pleading guilty to those charges.

14         And finally, I will ask you to tell me in your

15  own words what you did so that I can be satisfied you are,

16  in fact, guilty of the two wire fraud charges against you in

17  the Information, and that you are not just pleading guilty

18  for some other reason.

19         Again, your answers will be under oath, so you

20  must tell the truth.  If any of your answers are not

21  truthful, they may later be used against you for a charge of

22  perjury or making a false statement.

23         Also by pleading guilty, you waive your right

24  against self-incrimination.  You cannot take the Fifth

25  Amendment.  You must answer each and every one of my

Plea Hearing

1   questions.

2          Before accepting a plea of guilty, I expect that

3   you have fully discussed your case with Mr. McCoy, that you

4   have been advised of the nature of the charges against you,

5   your rights, the factual basis of your plea, the

6   consequences of pleading guilty, and any defense that you

7   might have to these charges.

8          Finally, I want to warn you in the strongest

9   terms possible that you should never plead guilty unless you

10  are, in fact, guilty.  Do you understand?

11          THE DEFENDANT:  Yes, Your Honor.

12          THE COURT:  That all being said, do you still

13  wish to plead guilty to the two counts set forth in the

14  Information?

15          THE DEFENDANT:  Yes, Your Honor.

16          THE COURT:  Mr. McBrearty, take the defendant's

17  plea and then place him under oath.

18          COURT CLERK:  Yes, Judge.

19          Mr. Obioha, sir, do you waive the reading of this

20  two-count Information 17-CR-84?

21          THE DEFENDANT:  Yes, Your Honor.

22          COURT CLERK:  And, sir, how do you plead to the

23  two counts, Count 1 and Count 2 of Information 17-CR-84,

24  guilty or not guilty?

25          THE DEFENDANT:  Guilty, Your Honor.

Plea Hearing

1          OBINNA OBIOHA, being first duly sworn, was

2    examined and testified as follows under oath:

3

4          THE COURT:  Speak up so that the Court Reporter

5    can get your words exactly.  Do you understand?

6          THE DEFENDANT:  Yes, Your Honor.

7          THE COURT:  And you understand the meaning of

8    being honest and telling the truth?

9          THE DEFENDANT:  Yes, Your Honor.

10          THE COURT:  Do you understand that you are now

11    under oath, and if you answer any of my questions falsely,

12    your answers may be used against you in another prosecution

13    for perjury or making a false statement.

14          THE DEFENDANT:  Yes, Your Honor.

15          THE COURT:  State your full name.

16          THE DEFENDANT:  My name is Obinna Obioha.

17          THE COURT:  How old are you?

18          THE DEFENDANT:  I am thirty-one.

19          THE COURT:  Do you read the write the English

20    language?

21          THE DEFENDANT:  Yes, I do, Your Honor.

22          THE COURT:  How far did you go in school?

23          THE DEFENDANT:  I have got a BS in business

24    administration, Your Honor.

25          THE COURT:  Where do you normally live?

Plea Hearing

1          THE DEFENDANT:  I live in Nigeria, Your Honor.

2          THE COURT:  Do you have a place in the United

3   States where you live?

4          THE DEFENDANT:  No, Your Honor.

5          THE COURT:  Are you married?

6          THE DEFENDANT:  No.

7          THE COURT:  Do you have children?

8          THE DEFENDANT:  No.

9          THE COURT:  Did you have a job before you were

10  arrested?

11          THE DEFENDANT:  Yes, I do.

12          THE COURT:  What was your position?

13          THE DEFENDANT:  I own Payback Entertainment.

14          THE COURT:  Do you use narcotics?

15          THE DEFENDANT:  No.

16          THE COURT:  Do you use alcohol?

17          THE DEFENDANT:  No, Your Honor.

18          THE COURT:  Have you consumed any pills or drugs

19  or medicine today?

20          THE DEFENDANT:  No, Your Honor.

21          THE COURT:  Are you currently under the care of a

22  doctor for any condition?

23          THE DEFENDANT:  No, Your Honor.

24          THE COURT:  And you are represented by Attorney

25  Joseph McCoy.

Plea Hearing

1           THE DEFENDANT:  Yes, Your Honor.

2           THE COURT:  And he was selected and hired by you?

3           THE DEFENDANT:  Yes, Your Honor.

4           THE COURT:  Are you satisfied with him?

5           THE DEFENDANT:  Yes, Your Honor.

6           THE COURT:  Did he advise you of your rights?

7           THE DEFENDANT:  Yes, Your Honor.

8           THE COURT:  Did you hear and understand what I

9     told you a few moments ago about your rights?

10          THE DEFENDANT:  Yes, Your Honor.

11          THE COURT:  And you have already intimated you

12    have read the Information that contains the charges against

13    you?

14          THE DEFENDANT:  Yes, Your Honor.

15          THE COURT:  And you have reviewed it with

16    Mr. McCoy?

17          THE DEFENDANT:  Yes, Your Honor.

18          THE COURT:  And so you understand exactly what

19    you have charged with in the two-count Information before?

20          THE DEFENDANT:  Yes, Your Honor.

21          THE COURT:  Did you also enter into a plea

22    agreement with the United States Government?

23          THE DEFENDANT:  Yes, I did.

24          THE COURT:  Did you review that Plea Agreement

25    with Mr. McCoy?

Plea Hearing

1            THE DEFENDANT:  Yes, I did.

2            THE COURT:  Did he answer any questions you may

3     have had about the Plea Agreement?

4            THE DEFENDANT:  Yes, Your Honor.

5            THE COURT:  Did you sign the Plea Agreement?

6            THE DEFENDANT:  Yes, I did, Your Honor.

7            THE COURT:  Has anyone forced you or threatened

8     you to get you to sign that Plea Agreement?

9            THE DEFENDANT:  No, Your Honor.

10           THE COURT:  Did you sign the Plea Agreement of

11    your own free will?

12           THE DEFENDANT:  Yes, Your Honor.

13           THE COURT:  Mr. Myers, would you summarize the

14    essential terms of that Plea Agreement if you would?

15           MR. MYERS:  Yes, Your Honor.  In the Plea

16    Agreement, Your Honor, the defendant agrees to the facts

17    that are specified in Paragraph 5(a) through 5(f).  The

18    essential terms of the Plea Agreement is that the defendant

19    agrees to having committed two instances of wire fraud, and

20    there are a number of sentencing stipulations set forth in

21    paragraph six.

22           The initial stipulation is that the parties agree

23    the base offense level is seven pursuant to U.S. Sentencing

24    Guidelines Section 2(b).  The parties are in dispute with

25    respect to what the total loss amount is, although the

Plea Hearing

1   parties agree that the loss amounts and, therefore, the

2   corresponding offense increase for the loss amount is no

3   less than twelve pursuant to U.S. Sentencing Guidelines

4   2B1.1(b)(1)(g).

5           The defendant's position is that losses stemming

6   from frauds outside the United States should not be taken

7   into account for purposes of determining the loss count as

8   part of relevant conduct.  The parties are in agreement that

9   the offense involved ten or more victims, resulting in a

10  two-level increase.

11          The parties are in agreement that a substantial

12  part of the fraudulent scheme was committed from outside the

13  United States, resulting in a two-level increase, and the

14  parties are in agreement the offense involved false

15  registration and use of a domain name, resulting in a

16  two-level enhancement under the sentencing guidelines.

17          The parties are also in agreement that the

18  defendant will be entitled to a three-level reduction for

19  timely acceptance of responsibility.

20          The Plea Agreement also stipulates that the

21  defendant will waive his right to appeal any sentence of

22  imprisonment of one hundred and eight months or less.  All

23  is set forth in Paragraph 7 of the Plea Agreement, and, at

24  the Court's pleasure, I can describe the maximum term of

25  imprisonments and the factual basis for the plea at Your

Plea Hearing

1    Honor's --

2                  THE COURT:  That's not necessary right now.

3                  Mr. Obioha, is what Assistant United States

4    Attorney Myers just said substantially your understanding of

5    the Plea Agreement that you have entered into?

6                  THE DEFENDANT:  Yes, Your Honor.

7                  THE COURT:  Now, do you understand that under

8    that plea agreement, you have given up your rights to appeal

9    or collaterally attack the sentence, and only the sentence,

10   unless I sentence you to more than one hundred and eight

11   months, which is nine years.  Do you understand?

12                 THE DEFENDANT:  Yes, Your Honor.

13                 THE COURT:  If I sentence you to less than a

14   hundred and eight months, you will not be able to appeal or

15   collaterally attack your conviction or sentence.  If I

16   sentence you to more than nine years, you will be able to

17   appeal the sentence, but not your plea of guilty.  Do you

18   understand clearly?

19                 THE DEFENDANT:  Yes, Your Honor.

20                 THE COURT:  Has your lawyer or the Assistant

21   United States Attorney, any government agent or anyone else

22   made any other promises to you other than those that may be

23   contained in the Plea Agreement?

24                 THE DEFENDANT:  No, Your Honor.

25                 THE COURT:  Anybody use any force or make any

Plea Hearing

1    threats against you to get you to sign that Plea Agreement?

2              THE DEFENDANT:  No, Your Honor.

3              THE COURT:  And are you on probation or parole

4    from any other court in the United States?

5              THE DEFENDANT:  No, Your Honor.

6              THE COURT:  Now, I am going to ask you to tell me

7    briefly in your own words what you did that makes you guilty

8    of these two wire fraud charges.  But first of all, I want

9    your attorney to show you the Plea Agreement and, in

10   particular, Paragraph 5 which goes on for over three pages.

11   Have you reviewed that with your attorney?

12             THE DEFENDANT:  Yes, Your Honor.

13             THE COURT:  And that contains the facts set forth

14   of what you did, and you acknowledge here, under oath, that

15   that factual in the three-plus pages is accurate.  Is that

16   correct?

17             THE DEFENDANT:  Yes, Your Honor.

18             THE COURT:  Now, I want you to just briefly tell

19   me in your own words what you did that makes you guilty of

20   these two wire fraud charges?

21             THE DEFENDANT:  Your Honor, I participated in

22   wire fraud.  Yes, Your Honor, I participated with a wire

23   fraud.

24             THE COURT:  Now, you have already told me that

25   you are a citizen of Nigeria?

Plea Hearing

1          THE DEFENDANT:  Yes, Your Honor.

2          THE COURT:  And how did you set up this scheme of

3    wire fraud, and did you have other people involved with you?

4          THE DEFENDANT:  Yes, Your Honor.

5          THE COURT:  Were they also from Nigeria or were

6    they from the United States.

7          THE DEFENDANT:  They are from Nigeria.

8          THE COURT:  All of them?  Did you have any

9    dealings with anybody in the United States as part of this?

10          THE DEFENDANT:  Yes, Your Honor.

11          THE COURT:  Who was that?

12          THE DEFENDANT:  Paul Malko (phonetically).

13          THE COURT:  Who is he?

14          THE DEFENDANT:  He is my friends from high

15    school, we met in high school.

16          THE COURT:  Where was he located?  Is he in the

17    United States.

18          THE DEFENDANT:  Yes, Your Honor.

19          THE COURT:  And what was your relationship with

20    him that was part of this scheme?

21          THE DEFENDANT:  He was -- like I said, he was my

22    friend from high school, and he set up the accounts that was

23    used to receive the proceeds from the fraud, Your Honor.

24          THE COURT:  And you had some people from Nigeria

25    also involved in this scheme?

17

Plea Hearing

1          THE DEFENDANT:  Yes, Your Honor.

2          THE COURT:  Who were they?

3          THE DEFENDANT:  There are several people, Your

4   Honor.

5          THE COURT:  I can hear you?

6          THE DEFENDANT:  There are several people, Your

7   Honor.

8          THE COURT:  Where are they how?

9          THE DEFENDANT:  They are still in Nigeria.

10          THE COURT:  And I note that you have admitted

11   under your Plea Agreement a certain amount of loss and you

12   are responsible for, and you dispute what the government

13   says here, loss of over a million dollars, correct?

14          THE DEFENDANT:  Yes, Your Honor.

15          THE COURT:  And that issue will be part of the

16   Presentence Report, and I will be making a determination on

17   that.  Do you understand?

18          THE DEFENDANT:  Yes, Your Honor.

19          THE COURT:  Now, I am going to -- you may be

20   seated.

21          And, Mr. Myers, would you briefly summarize what

22   the government would prove if the case went to trial?

23          MR. MYERS:  Yes, Your Honor.  The government

24   would prove beyond a reasonable doubt that the defendant, a

25   Nigerian citizen, residing in Nigeria, stole more than two

Plea Hearing

1    hundred and fifty thousand dollars from businesses and

2    individuals in the United States and elsewhere with

3    assistance from others hacking into legitimate e-mail

4    accounts and creating knock off e-mail accounts to cause his

5    victims to send money by wire.

6              Specifically, the defendant, with assistance from

7    others, sent e-mails from the compromised e-mail accounts

8    with the knock-off e-mail accounts telling the victims to

9    wire money as payment in previously negotiated deals, and

10   then providing bank accounts controlled by the defendant and

11   others unrelated to the previously negotiated deals.  For

12   example, between April 14th, 2016 --

13             THE COURT:  Well, I don't want you to read.

14             MR. MYERS:  Oh, I apologize, Your Honor.

15             THE COURT:  It is three and a half pages, they

16   are part of the record.  I just want you to briefly outline

17   what the scheme was, what he did, if you can.  This is all

18   part of the record.  We don't need to have that read again.

19             MR. MYERS:  Understood, Your Honor.

20             The scheme boils down to the proposition that the

21   defendant and a group of others in Nigeria were involved in

22   hacking into e-mail accounts and computer systems of

23   businesses and individuals in the United States.  They

24   monitored the information that was passing through those

25   e-mail accounts and computer systems, and when they were

Plea Hearing

1   able to determine that a business transaction, a previously

2   negotiated business transaction, was about to be consummated

3   by payment, a wire or other mechanism, the defendant would

4   use, and assisted by his criminal associates, would use a

5   spurious e-mail account designed to look like an e-mail

6   account of the actual participant, and using that pseudonym

7   e-mail account, would contact the victim and trick the

8   victim into sending the money to an account that was in fact

9   controlled by the defendant or his associates.

10          As a result of that, the defendant is charged

11   with two discrete wire frauds in this case involving a

12   business in New Jersey and a business in California, both of

13   which passed wires into an account in the United States, in

14   New York, that was controlled by the FBI, and that was an

15   account in the Northern District of New York which is the

16   basis for the two counts charged in the Information.

17          So in a nutshell, Your Honor, that is the scheme

18   and, as Your Honor recognized, it is more fully laid out in

19   the record, paragraph five of the Plea Agreement.

20          THE COURT:  As I understand it, there is an issue

21   as to the amount of loss which this defendant is responsible

22   for, correct?

23          MR. MYERS:  That is correct, Your Honor.

24          THE COURT:  That would be resolved by me as part

25   of Presentence Report.

Plea Hearing

1          MR. MYERS:  That is correct, Your Honor.  The

2     plea agreement does recognize that the accounts that were

3     receiving the fraudulent wires received a total of

4     approximately six and a half million dollars.  That is set

5     forth in Paragraph 5(f).

6          And at this point, it is the government's

7     position that the defendant is responsible for at least one

8     and a half million dollars in fraudulent wires, and that

9     number obviously can change as the investigation continues.

10          THE COURT:  And you acknowledge that he claims he

11     is only responsible for approximately two hundred and fifty

12     thousand, correct?

13          MR. MYERS:  No less than two hundred and fifty

14     thousand dollars; that is correct, Your Honor.

15          THE COURT:  Stand up.  Mr. Obioha, is what the

16     Assistant United States Attorney Myers just said

17     substantially what you did and what occurred in this case?

18          THE DEFENDANT:  Yes, sir.  Yes, Your Honor.

19          THE COURT:  Is that also your understanding,

20     Mr. McCoy?

21          MR. MCCOY:  It is, Your Honor.

22          THE COURT:  Mr. Myers, please inform the

23     defendant and the Court what penalties he is facing as a

24     result of his plea of guilty today.

25          MR. MYERS:  Your Honor, the defendant faces a

Plea Hearing

1    maximum term of imprisonment of twenty years, a maximum fine

2    of two hundred and fifty thousand dollars, a term of

3    supervised release of up to three years, a violation of

4    which could result in a term of imprisonment of an

5    additional two years.

6            The defendant also faces the same penalties the

7    Court recited in respect to the loss of the right to own a

8    firearm, vote, and other privileges associated with being an

9    American, the defendant is not a citizen of the United

10   States and, therefore, is likely to be deported after

11   serving any sentence imposed by this Court.

12           The defendant also faces an Order of Restitution

13   as well an Order of Forfeiture as set forth in the

14   Information, and that would be forfeiture of the proceeds

15   that he received from victims in this case.  And the

16   Restitution Order, if any is ordered by the Court, will

17   require the defendant to repay monies to victims of his

18   trust.

19           The defendant also faces a two hundred dollar

20   special assessment.

21           THE COURT:  Mr. Obioha, do you realize the

22   penalties you are facing as a result of your plea of guilty

23   today?

24           THE DEFENDANT:  Yes, Your Honor.

25           THE COURT:  Do you realize you are facing a

Plea Hearing

1   prison term, possible restitution, and forfeiture, and

2   costs.  Do you understand?

3           THE DEFENDANT:  Yes, Your Honor.

4           THE COURT:  Under the United States Sentencing

5   Reform Act, we do have guidelines which are strictly

6   advisory, but I must consider them and make a determination

7   on those.

8           So, Mr. Myers, is there any guideline sentence

9   projected at this time?

10          MR. MYERS:  Yes, Your Honor, the projected

11  guideline sentence at this time, and this is an estimate

12  only subject to further revision, is that before acceptance

13  of responsibility, the defendant's total offense level is

14  thirty, assuming a criminal history category of one, that

15  corresponds to a term of imprisonment of ninety-seven to one

16  hundred and twenty-one months.

17          After a three-point reduction for timely

18  acceptance of responsibility, that range would drop from

19  ninety-seven to one twenty-one, to seventy to eighty-seven

20  months.  And again, Your Honor, that's only an estimate.

21          THE COURT:  Mr. Obioha, did you review the

22  guidelines with Mr. McCoy?

23          THE DEFENDANT:  Yes, Your Honor.

24          THE COURT:  The next step will be a Presentence

25  Report, and you must cooperate fully with the Probation

Plea Hearing

1   Officer who will be preparing that report for me.  Once it

2   initially has been completed, you, your attorney, and the

3   government will have a number of opportunities to object to

4   any of the facts that are in that report or to challenge the

5   advisory guideline recommendations by the Probation Officer.

6           I again remind you that under your Plea

7   Agreement, your right to appeal or collaterally attack your

8   sentence is limited unless I sentence you to more than a

9   hundred and eight months, and that is strictly as to the

10  amount of the sentence and not your plea of guilty.

11          I also inform that under the United States

12  system, parole has been abolished, and when you are

13  sentenced to prison, you will not be released on parole.

14  However, you may secure good behavior credits, a maximum of

15  fifty-four days per year.

16          Now, that you have been informed about the

17  maximum penalties you are facing and how the advisory

18  guidelines might affect you, do you still wish to enter a

19  plea of guilty to the two-count Information.

20          THE DEFENDANT:  Yes, Your Honor.

21          THE COURT:  Are you pleading guilty because you

22  are guilty and for no other reason?

23          THE DEFENDANT:  Yes, Your Honor.

24          THE COURT:  Mr. McCoy, for the record, would you

25  briefly state your background and experience?

Plea Hearing

1                MR. MCCOY:  Yes, Your Honor.  I was admitted to

2    the state courts of New York and federal courts for the

3    Northern District in January of 1980.  I practice almost

4    exclusively criminal law from that time.  I was an Assistant

5    Public Defender in Albany County for over thirty-four years.

6    I have probably handled in excess of two hundred federal

7    criminal cases.

8                THE COURT:  And you have been retained by the

9    defendant in this case?

10               MR. MCCOY:  Retained by his family, yes, Your

11   Honor, I was.

12               THE COURT:  Approximately how much time have you

13   spent with the defendant and on this case so far?

14               MR. MCCOY:  He has been incarcerated, and I have

15   been out to see him probably at least five or six times.

16               THE DEFENDANT:  Six times.

17               MR. MCCOY:  We have spent hours going over

18   multiple plea agreements and the amendments to the plea

19   agreements that Mr. Myers and I have changed.  I saw him

20   twice in this past week before this plea just to go over the

21   questions that he had.

22               THE COURT:  And have you advised the defendant of

23   is rights, the nature of the charges against him in the

24   two-count Information, and the consequences of pleading

25   guilty to those charges?

Plea Hearing

1          MR. MCCOY:  I have.

2          THE COURT:  Have you had discovery of the

3    government's evidence, either formally or informally?

4          MR. MCCOY:   Actually both Mr. Myers and I met at

5    his office, provided documents and full investigation, and

6    they also let me see other documents.  I am happy with the

7    discovery that we have had in this matter.

8          THE COURT:  Have you made any promises or threats

9    to induce the defendant to plead guilty?

10          MR. MCCOY:  I have not.

11          THE COURT:  Are you satisfied he is pleading

12    guilty freely and voluntarily?

13          MR. MCCOY:  I am.

14          THE COURT:  Are you satisfied he understands the

15    nature of the charges against him?

16          MR. MCCOY:  I do.

17          THE COURT:  Are you satisfied he understands the

18    consequences of pleading guilty to those charges?

19          MR. MCCOY:  I do, Your Honor.

20          THE COURT:  Do you know of any defense he may

21    have?

22          MR. MCCOY:  None that would guarantee an

23    acquittal, no.

24          THE COURT:  Do you know of any other reason why

25    the defendant should not plead guilty to the two-count

Plea Hearing

1    Information.

2              MR. MCCOY:  I do not.

3              THE COURT:  Based on the foregoing, I find that

4    the defendant's plea of guilty to Counts 1 and 2 of the

5    Information is voluntary.

6              I find the defendant is fully competent and

7    capable to enter a plea of guilty to those charges.  I find

8    the defendant understands the charges against him and the

9    consequences of pleading guilty.

10             And I find there is an independent basis in fact

11   for me to accept and enter the plea of guilty to Counts 1

12   and 2 of the Information.

13             Therefore, I direct the Clerk to enter a plea of

14   guilty to Counts 1 and 2 of the Information charging the

15   defendant with wire fraud in violation of 18 U.S.C. 1343.

16             I reserve decision on the Plea Agreement until

17   sentencing.

18             I direct the Probation Department to prepare and

19   submit a Presentence Report.

20             Sentencing is tentatively scheduled for

21   Wednesday, July 26, 2017, at 11:30 a.m. here in Utica.

22             The defendant is presently detained.  Is there

23   any reason why that status should change, counselors?

24             MR. MYERS:  Not from the government's

25   perspective.

27

Plea Hearing

1          MR. MCCOY:  Not that I know of, Your Honor.

2          THE COURT:  Anything further?

3          MR. MYERS:  No, thank you, Your Honor.

4          MR. MCCOY:  No, thank you, Judge.

5          THE COURT:  The defendant is remanded to the

6   custody of the United States Marshals pending sentencing.

7          Mr. McBrearty.

8          COURT CLERK:  Court stands adjourned.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

CERTIFICATE OF OFFICIAL REPORTER

1

2          I, NANCY L. FREDDOSO, RPR, Federal Official Court

3    Reporter, in and for the United States District Court for

4    the Northern District of New York, do hereby certify that

5    pursuant to Section 753, Title 28, United States Code that

6    the foregoing is a true and correct transcript of the

7    stenographically-reported proceedings held in the

8    above-entitled matter and that the transcript page format is

9    in conformance with the regulations of the Judicial

10   Conference of the United States.

11

12

13                    S/NANCY L. FREDDOSO, RPR

14                 Federal Official Court Reporter

15

16

17

18

19

20

21

22

23

24

25

